First up, how much time would you like to reserve? Two minutes? Very good. Good morning. May it please the Court, Larry Davidson on behalf of Oak Harbor. I first have to say that when I came through security today in the x-ray machine, I was wondering if that was Shielding's equipment and if they were going to zap me when I came through. But anyway, I made it through with no problems. It all depends on how well you do here today. Yeah, we're not out yet. Shielding has an ongoing relationship with FedEx, with Federal Express. FedEx bases its freight charges upon the shipper's valuation of its own cargo. Shielding's computer is tied in with the FedEx computer, so it is illogical and a little disingenuous for Shielding to claim that it understands how FedEx rates its shipments and charges for freight charges based upon valuation, but then in the same breath say, well, we didn't know that Oak Harbor was doing the same thing. Shielding provides the class code, the commodity description for the cargo, which is not something just rolled off your tongue. It's item number 156830 sub 1, plastic sheeting, not printed, in flat sheets or tubes, not further processed. That's something you don't read in the Oregonian. I mean, it's just is not something. It's trade industry talk, and it's from Shielding. Well, it isn't the real issue we're dealing with here is whether Hughes remains good law, and if it does, whether these folks were provided the two alternatives. The course of dealing concept and trade among merchants, to me as a former transactions lawyer, makes a whole lot of sense unless the Congress has otherwise provided and our circuit has otherwise ruled. Do you have any case law that indicates that Hughes is no longer good law post the passage of the Carmack Amendment? Your Honor, I'm not saying that Hughes is not good law. Okay. Well, let's say that it is. The second prong of Hughes says, give the shipper a reasonable opportunity to choose between two or more levels of liability. Do you agree with that? That's the second prong? Yes. Okay. So if that's the case, whatever FedEx does, whatever these people have done otherwise, ultimately the standard under Hughes is to find out what you folks provided. Isn't that correct? Yes. So if that's the case, can you address what, based upon what was on the face of the bill of lading, or if you went to the website, they would have found about two or more choices? Before I respond, Your Honor, may I respond as to the course of dealing part? If you wish. Okay. It's your time. The course of dealing history between the parties, in this case there are 56 of them, satisfies the second and third prong of Hughes. Where is that said? What case? There's the Atlantic. I've got a starting in 1990, the Tenth Circuit case, and Norton v. Jim Phillips. In that case, there were 60 shipments. The liability limitation was upheld. In 03, the New Jersey District Court in Penske Logistics upheld the limitation. They just said many. They didn't give a number. In 07, another New Jersey District Court, the Travelers case that recently came out, there were 670 in that case. In 04, 2004, there was a California District Court case, Atlantic Mutual. There were 101 shipments there. In 08, the one that just came out a couple, a few weeks ago, that was sent to the court, or no, I can't remember. Putting aside the fact that you've cited a lot of district courts, which while we admire them greatly, they're not binding on our court, what case among those cited from any other circuit can you find that has facts like these where at least from the record it does not appear that there was a choice of two or more liability levels? Can you cite me to any case that deals with those facts? Well, what I'm thinking of, Your Honor, and no, I don't have an exact fact pattern that's identical to this situation. I mean, there is, I do not. And those are what govern us, aren't they? The facts of the case? Well, but, and the course of dealing. Well, again, the course of dealing is a very old, old, old concept going back for thousands of years. But the reality is when the Congress of the United States passes a statute and says this is the way we're going to do it, that overrides common law. It overrides what the commercial code calls, you know, dealings among merchants. And what I'm looking for is it seems like our court in Hughes set forth a standard, four parts. The first part doesn't apply anymore because the ICC is gone. We still have the other parts. There's no case law that says that it's disappeared. You need to meet these other prongs. I'm looking for something from you that says you met the second prong. I understand you're arguing about course of dealing. It is persuasive outside the statutory context, at least to me. I don't know about my colleagues. But I'm struggling with this second prong. Where is the case law that says that that doesn't apply, or if it does apply, where is the evidence in the record that shows that you folks provided two or more levels of liability that these folks could select from? Well, it's undisputed on that part, Your Honor, that Oak Harbor had the procedures in place to provide a choice of rates had the shipper inquired. But where does it say in the – either on the bill of lading or on the website that – what those were so they could make a choice? Okay. It's not on the bill of lading. It's not on the website. Okay. So where were they going to get this from, a discussion? Pardon me? Oh, yeah. Where were they going to get the choice? They were going to get into a discussion with your folks and say, I just happened to be reading Hughes and I noticed that you're supposed to provide two – how did that come up? How was that going to happen? Because on the bottom right side of the bill of lading in very bold print, it says limitation of liability may apply. Okay. So that – I agree. It says it may apply, but it doesn't say how it applies. But more importantly, it doesn't say how the second prong of Hughes is satisfied. Right? Well, I won't go over the same ground again, Your Honor. Real quickly, in – prior to TIRA, 1994, shippers' knowledge was presumed. There was a filed rate doctrine. TIRA came along, removed the filing of tariffs, and therefore the shippers did not have a way to limit their liability. ICTA came along in 1995, and the conference report – we're running out of time – conference report in there states that this is to allow the – put the onus back on the shippers to inquire as to the terms of the transportation. Okay. But back to my question about Hughes. How is the second prong of Hughes satisfied? Well, Your Honor, the course of dealings cases say that the – again, based upon that conference report, that the shipper – because the shipper has a – has the opportunity to choose, and knowledge is presumed when there's been a course of dealing – I can't remember exactly which case that came out of – and the shippers agree to the terms – they are deemed to agree to the terms of the bill of lading. Okay. Well, let's say that's true. Even though it's a conference report and not binding, they are deemed to have agreed to the terms of the bill of lading. What did the bill of lading say? The bill of lading said that there may be some limit in liability. What does that tell them? It's on – they're on notice, Your Honor. On notice of what? That there may be a limitation of liability. Okay. But where are the two choices, two or more choices, that Hughes requires? These are commercial entities. They make an inquiry to the carrier. Okay. So ultimately, it sounds like you folks come back to the course of dealing. That is your argument. Is that right? It's a good argument. Yes, Your Honor. Okay. Your time is almost up. I've used up part of it. We're going to give you the full two minutes, so we'll let your opposing counsel have his time in the dock here. Please, the Court. John Anderson, appearing for shielding. The Court is correct. It's a statutory framework of liability for motor carriers in connection with freight loss and damage. It was adopted to establish a nationwide uniform system so that carriers would not have to be facing 50 or 48 different standards of liability. In return, carriers were held to a very strict standard of liability with only very specific exceptions involving act of God, act of the shipper, inherent vice, and act of the public authority. They also were liable for full actual damages, except they could limit their liability in a certain specific way. And that way was spelled out in Hughes, and Hughes is still good law. And the second prong is that they must offer a choice of two or more levels of liability. Now, Oak Harbor did not offer a choice of two or more levels of liability. Mr. Davidson has essentially admitted that here today. The only response they have is that, you know, their answer in meeting this requirement is if shielding had asked. So essentially they're saying that, you know, we meet this obligation by putting a burden on the shipper. That's just not the law. And I want to point out a couple things. Hughes was recently affirmed by this court three months ago in the Morrow v. Globe case, where the court referred to the reasonable opportunity to choose between different levels of liability. But there's a couple things in Hughes that I think are important to note. On the course of dealing issues ‑‑ oh, excuse me, first. The court in Hughes pointed out that the shipper in that case had drafted the contract and directly negotiated its terms. And that was a major factor in the court finding that there was ‑‑ that the liability limitation applied there. And that also applies in many of the cases cited by Oak Harbor. They referred to Penske and they referred to Siren and Sassy Dahl. I would point out that in those cases, if those all dealt with a fact situation where the shipper prepared the bill of lading, created the bill of lading, and was involved in negotiating the contract. In those cases, the court said that we're going to hold the shipper to their obligation. So in that sense, the course of dealing does make a difference. Only in that instance, only in that instance. And I would point out Oak Harbor went to lengths in its brief that shielding was involved in preparing the bills of lading. That's not true. Shielding merely filled in blanks in bills of lading that had been prepared by Oak Harbor. The commodity description, which Oak Harbor wants to make a big deal about, was prepared by another carrier and presented to Oak Harbor by shielding and said, here's the commodity description this other carrier right away is using. And Oak Harbor went back and checked it out and said, yeah, that's the correct one. But I would point out that simply filling in the blanks is not enough as far as that. And this is in the Penske case, which is a district court case, but they talk about the siren and sassy doll. And they talk about the carrier or the shipper preparing the bill of lading and choosing the released rate. That does not occur here. In siren, the 11th Circuit Court case, I think it's important to point out or note that or excuse me, in sassy doll the 11th Circuit clarifies what it means by the shipper preparing the bill of lading. And they specifically say that we were speaking of creation and not completion. The case is cited in the siren opinion. Bear that out. For purposes of this rule, when the shipper actually creates the bill of lading, it does not apply when the shipper is merely filling in blanks of the bill of lading that the carrier created. And that's what the situation is here. But also point out regarding the 11th Circuit acknowledged Hughes, even though it's not their case. Well, there's another Hughes case out of the 7th Circuit. It essentially holds the same thing. It seems to get cited a lot more for various reasons. People like the 7th Circuit. They all have the four same standards. The other thing I would point out as far as the change in ICTA, and that is pre-ICTA, prior to 1995, a carrier had to have a tariff on file with the ICC. Now, the filing of the tariff itself didn't limit liability. If the tariff didn't meet the requirements, the four requirements, ballot, tariff, choice, liability, and agreement and acknowledgment, there was no limited liability. And Hughes, in this court, specifically dealt with that and addressed the comment specifically by saying that the mere filing of a tariff is not enough. The filing of a tariff alone does not limit the carrier's liability. The shipper must be given a reasonable opportunity to choose to accept the carrier's proposed limit. So that's pre-ICTA. ICTA then changed and said, okay, carriers don't have to file a tariff, but they still have to have a tariff. Well, having a tariff, that's not a free pass for the carrier. They still have to meet these requirements, one of which is to provide a reasonable opportunity of two different levels of liability. And OCARB didn't do that. Very good. Thank you very much. We'll give you two minutes to finish off there because I took some of your two minutes. Thank you. A few comments. The commodity description, I think we're agreed, OCARB did not provide that. They inherited that. It's undisputed. I may have mentioned this before, but I just want to make sure that OCARB had a procedure in place for the shipper to obtain a freight charge based upon valuation. That's undisputed. And what was that method?  The affidavit, Your Honor, they would contact the carrier, and the carrier, there's different options. First off, the shipper might just get their own insurance because it's usually cheaper. Right. And I don't need you to detail what those would be, but I'm just interested in, it sounds like you're putting the burden on the shipper as opposed to the carrier to provide the information so that the carrier can choose. So the shipper can choose. Yes, Your Honor, that's true. We're putting the burden on the shipper. That's the way it was pre-ECTA, and that's the way it is after ECTA. I mean, that's, I understand you're Assuming that the choices are there. Yes. But it's not disputed that the choices were there. I thought there was a dispute. Are you saying that there were two or more methods that were available, either disclosed on the bill of lading or on the website? No, I didn't say that, Your Honor. Okay. You'd asked before how they're going to find out. They inquire. That's how they find out. The insurance company case that this Court decided was a CARMAC case. It was not dressed up and argued as one, but it was a CARMAC case. So I just want to be sure I understand this correctly. If somebody didn't know about Hughes, and let's assume that most regular folks who are just minding their business and shipping things don't know about Hughes, how would they have even known that they had a right to know two or more possibilities of limiting liability? Because of the bold print on the bill of lading that says, it quotes a statute now that, you know, a layperson isn't going to have 49 U.S.C. sitting there, but it quotes the statute to, you know, 49706. It's in bold. It says limitation of liability may apply. There are several cases where the courts have upheld limitation that contain the identical language. Oak Harbor wasn't original in that. Thank you very much for your argument. We appreciate both of you, and the case just argued will be submitted. We will next hear argument in the case of Juan Ortiz-Alvarado v. Mukasey. Thank you.
judges: Tashima, Smith, Wu